## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| EVELYN IRIZARRY APONTE,      ) | |
|          ) | |
|       Plaintiff,     ) | |
|          ) | **CIVIL ACTION** |
| v.           ) | |
|          ) | **No. 15-4948-JWL** |
| CAROLYN W. COLVIN,     ) | |
| Acting Commissioner of Social Security,   ) | |
|          ) | |
|       Defendant.    ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.      Background

Plaintiff applied for DIB and SSI benefits, alleging disability beginning February 1, 2012.  (R. 13, 210, 216).  Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits.  She argues that the

ALJ erred in weighing Dr. Kromo's medical opinion and in failing to consider her mental impairments in assessing residual functional capacity (RFC).

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

2

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the

economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds no error in the evaluation of Dr. Kromo's medical opinion and finds that the ALJ properly considered Plaintiff's mental impairments in assessing RFC.

## II.     Evaluation of Dr. Kromo's Medical Opinion

Plaintiff points out that Dr. Kromo's opinion "plainly establishes limitations far greater than those set forth in the ALJ's RFC findings" and "establishes that Plaintiff met her burden of coming forth with evidence establishing that she is 'disabled.'"  (Pl. Br. 10).  She argues that the ALJ erred in discounting Dr. Kromo's opinion because his rationale in doing so is not supported by the record evidence.  Specifically, she argues that the inconsistencies allegedly found in Dr. Kromo's opinion can be explained, or are merely inadequacies in the opinion requiring the ALJ to recontact Dr. Kromo, id. at 12-13; that Dr. Kromo provided adequate support for her opinion and the ALJ provided "no authority for the proposition that a medical source statement must include a narrative, and there is none," id. at 13-14; that the ALJ misrepresented Plaintiff's allegations, id. at 14-15; and he impermissibly relied "upon his lay analysis of the raw medical data."  Id. at 15 (citing McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002)).

The Commissioner argues that the ALJ's evaluation of Dr. Kromo's opinion was proper and is supported by the record evidence.  (Comm'r Br. 6-8).  She argues that Plaintiff's objections are based merely on an alternative view of the evidence and points out that where the record evidence supports two fairly conflicting views, and one of those

4

views is that of the agency, the court may not reject the agency's view. Id. at 8. She then explains how, in her view, the evidence supports the ALJ's evaluation. Id. at 8-10.

As the parties appear to agree, a treating physician's opinion about the nature and severity of a plaintiff's impairments should be given controlling weight if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician's opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).

A treating source opinion which is not entitled to controlling weight is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Watkins, 350 F.3d at 1300. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. §§ 404.1527(c)(2-6), 416.927(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v.

Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).  However, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300).

After considering the regulatory factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion.  If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so.  Watkins, 350 F.3d at 1301.  The question here, then, is whether the reasons given by the ALJ to discount Dr. Kromo's opinion are specific, legitimate reasons, supported by the record evidence.  The court finds that they are.

The ALJ provided discussion of Dr. Kromo's treatment records which fairly summarized those records.  (R. 18).  He discussed Social Security Ruling (SSR) 12-2p, Evaluation of Fibromyalgia, and noted the two means recognized in that Ruling whereby fibromyalgia may be evaluated.  Id. at 19-20.  He then discussed the record evidence regarding Plaintiff's fibromyalgia which consisted primarily of Dr. Kromo's treatment records, determined that Dr. Kromo's records complied with either of the appropriate means for evaluating fibromyalgia, and held that Plaintiff's fibromyalgia is severe within the meaning of the Act and of SSR 12-2p.  (R. 20).  He also discussed the record evidence regarding Plaintiff's alleged mental impairments (R. 20-22), recognized that it was a "limited record," noted that "evidence on the claimant's mental status is referenced

obliquely in the form questionnaires from Dr. Kromo," and recognized Dr. Kromo's opinion that Plaintiff's mental symptoms frequently interfered with her attention and concentration and that she is capable of low stress jobs. Id. at 21 (citing Ex. 9F).

Finally, the ALJ summarized the opinion forms prepared by Dr. Kromo and found that she was unable to give the opinion "much weight." (R. 25).  He provided numerous bases for his determination:  The medical questionnaires were entitled to little weight because they were not supported by a narrative explanation.  Review of Dr. Kromo's treatment notes does not provide the missing explanation.  Dr. Kromo's treatment notes remained the same over time despite Plaintiff's reports that some treatment helped and some did not, and that her condition improved with stretches, massage, and hot showers.  Dr. Kromo's continued recommendation of graded exercise suggests she believed Plaintiff could perform such exercise.  The treatment notes suggest limitation to sedentary exertion but not the extreme limits in the opinion forms.  Id. at 25.  Dr. Kromo's opinion forms had internal inconsistencies regarding lifting, carrying, and postural activities, her "opinion on [Plaintiff's] exertional capacity contrasts considerably with [Plaintiff's] own estimates," and Dr. Kromo's limits on reaching or use of Plaintiff's left hand do not square with Plaintiff's cooking, driving, shopping or personal care.  (R. 26).

Plaintiff does not really claim the evidence does not support the reasons given by the ALJ.  Instead she argues that the ALJ misunderstands or misrepresents the evidence.  First, she argues that the ALJ asserted a false inconsistency when he noted "Dr. Kromo's inability to estimate how many city blocks Plaintiff can walk," and argues that the ALJ

should have recontacted Dr. Kromo for clarification.  (Pl. Br. 12).  But, the

"inconsistency" argued by Plaintiff was not an inconsistency relied upon by the ALJ.

Rather, it was a part of the ALJ's summary of Dr. Kromo's opinion where he stated Dr.

Kromo's opinion regarding Plaintiff's capacities to sit, stand, and/or walk in a work day,

and recognized Dr. Kromo's statement in her form that she did not know "how many

blocks the claimant can walk without rest."  (R. 25).  That is an accurate statement of Dr.

Kromo's opinion.

Plaintiff makes two arguments regarding the ALJ's consideration of Dr. Kromo's

opinion regarding lifting, carrying, and postural activities.  She argues that the ALJ

misunderstood Dr. Kromo's notation of "unclear" on one page of her opinion form (Pl.

Br. 12-13), and that the ALJ's statement that Dr. Kromo's "internal inconsistency

regarding the claimant's capacity for lifting, carrying, and postural activities is

concerning" (R. 26) "is at once confusing."  (Pl. Br. 14).  It is Plaintiff that

misunderstands the decision, and not the ALJ who misunderstands Dr. Kromo's opinion.

Plaintiff looks first to the ALJ's summary of Dr. Kromo's opinion and argues that

the ALJ misunderstood Dr. Kromo's use of the notation "unclear," but Plaintiff

misunderstands the decision.  In the portion of the decision cited by Plaintiff, the ALJ was

summarizing Dr. Kromo's opinion regarding Plaintiff's lifting, postural, and handling

limitations contained at p. 376 in the record.  (R. 25) (citing Ex. 9F, p.5).  He continued

his summary of Dr. Kromo's opinion:  "On the next page, she was then asked to answer

similar questions on lifting, carrying, and postural activities, and environmental

tolerances--in contrast to her previous answers, she wrote 'unclear' on this page." Id.

(emphasis added) (citing Ex. 9F, p.6 (R. 377)).  The record clearly supports the ALJ's

summary.  While the record evidence might also support Plaintiff's understanding that

Dr. Kromo's notation simply meant she did not understand the questions on that page, it

equally well supports the ALJ's understanding that her statement was internally

inconsistent regarding Plaintiff's lifting, carrying, and postural activities.  The court may

not reweigh the evidence or substitute its judgment for that of the ALJ.  Bowman, 511

F.3d at 1272; Hackett, 395 F.3d at 1172.  Plaintiff's second assertion (that the ALJ's

finding of an internal inconsistency regarding lifting, carrying, and postural activities is

confusing) misunderstands that the ALJ's finding in this regard refers back to his

summary discussion regarding these two consecutive pages in Dr. Kromo's questionnaire.

There is no error in this regard.

  Plaintiff argues that the ALJ did not cite authority for the proposition that a

medical source statement must include a narrative, and that there is no such authority.

Although Plaintiff is technically correct that there is no authority stating a medical source

statement must contain a narrative, the Tenth Circuit long ago held that reports consisting

solely of box-check forms "standing alone, unaccompanied by thorough written reports or

persuasive testimony, are not substantial evidence."  Frey v. Bowen, 816 F.2d 508, 515

(10th Cir. 1987).  Plaintiff argues that, in any case, Dr. Kromo explained her opinions

when she noted she treats Plaintiff monthly, diagnosed polyarthritis and fibromyalgia,

stated Plaintiff's condition was guarded, described symptoms of fatigue and stiffness and

"debilitating" pain, stated that postural movements required extra time for Plaintiff, and stated that Plaintiff demonstrated eleven "tender points" for fibromyalgia.  (Pl. Br. 13-14). Plaintiff is correct that Dr. Kromo noted each of these things, but none of them constitutes an explanation of how, based on these facts and other information revealed in her treatment and examination of Plaintiff, she arrived at the specific limitations opined. While this is not the strongest reason provided by the ALJ in support of his decision to discount Dr. Kromo's opinion, it is supported by the record evidence and is not erroneous.

Plaintiff argues that the ALJ's finding (that Dr. Kromo's opinion of Plaintiff's limitations is inconsistent with Plaintiff's own estimates) relies upon an inaccurate understanding of Plaintiff's testimony.  Id. at 14.  As Plaintiff argues, the ALJ stated that Plaintiff testified that she can sit, stand, and walk 6 hours each in an eight-hour workday whereas Dr. Kromo opined that Plaintiff can sit, stand, and walk less than two hours each in an eight-hour workday.  (R. 26).  Plaintiff argues the ALJ's statement is false because although Plaintiff stated that she sits, rests, walks, and stands six hours in a day, that should be understood as a twenty-four hour day, and that her testimony is "best understood as explaining that she sits, stands, walks, and rests in equal proportions," and in a work-day she would only be able to do two hours of each, including resting, which is consistent with Dr. Kromo's opinion.  (Pl. Br. 14-15).  While Plaintiff's view of the testimony is an arguable view, the ALJ's understanding best fits and is supported by the record evidence.  Here is the hearing testimony in this regard:

10

Q     And since February of 2012, how much time do you think you could
      spend walking over an eight-hour day?  Not continuous, say you do a
      little bit, rest, do some more, add up the pieces.

A     I would say that over an eight-hour period I walk about six hours in
      one day, but that's just, I'll walk a bit and stop, and walk and stop.

Q     Okay.  Over an eight-hour day, since February 2012, how much time
      can you spend just standing, like at a -- like when you're at the stove
      or when you're at the sink?  Again, taking breaks, going back.

A     You mean -- or again, in a day?

Q     In a day, in an eight-hour day.

A     Okay.  I would say that in a -- over a day, it's about the same.  Six
      hours sitting, six hours resting, six hours walking, six hours standing.

Q     Six hours sitting?

A     Yeah, but not all at once.

Q     No, I got that.

(R. 58-59).  This colloquy leaves little room for misunderstanding.  The questions and

answers refer to an eight-hour day.  While the response regarding resting 6 hours is not

responsive to the question asked and introduces some doubt, Plaintiff also responded that

she can sit six hours in an eight-hour day although that was not the question.  The court

cannot see how the ALJ could have been more clear in his questions.  Plaintiff responded

that she can stand six hours in an eight-hour workday and that she can walk six hours in

an eight-hour workday.  On follow-up, Plaintiff acknowledged that she could sit six hours

in an eight-hour day even though she could not sit six hours at once.  Plaintiff was

represented at the hearing by an attorney, and if he felt the question or answer was

confusing he could have sought clarification.  He did not.  While the cold transcript leaves some room for argument, the ALJ was present at the hearing and he understood the answers to be that Plaintiff is able to stand, walk, or sit up to six hours each in an eight-hour day.  The record supports that understanding, and the court may not substitute its judgment for that of the ALJ.  Moreover, there can be no doubt that Plaintiff stated that she can walk six hours after adding up the pieces in an eight-hour day.  If nothing else, the ALJ is correct that this is inconsistent with Dr. Kromo's opinion that Plaintiff cannot walk more than two hours in an eight-hour day.

Plaintiff's final argument regarding the medical opinion evidence--that the ALJ erroneously relied upon his own lay opinion--is without merit.  Here, the ALJ did not substitute his lay opinion for Dr. Kromo's opinion, rather, he weighed Dr. Kromo's opinion properly in accordance with his duty as the adjudicator and explained his reasons for discounting the opinion.  Although an ALJ is not an acceptable medical source qualified to render a medical opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."  Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004).  "And the ALJ's RFC assessment is an administrative, rather than a medical determination."  McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing Social Security Ruling (SSR) 96-05p, 1996 WL 374183, at *5 (July 1996)).  Because RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ."  Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. §§ 404.1545(a),

416.945(a).  And, the final responsibility for determining RFC rests with the

Commissioner.  20 C.F.R. §§ 404.1527(e)(2), 404.1546, 416.927(e)(2), 416.946.  In

McGoffin, the court found that "the ALJ's unfounded doubt . . . in the face of unrefuted

evidence to the contrary, was error."  Here, the ALJ's finding had a foundation, it was

based on and supported by the record evidence, and the contrary evidence was not

unrefuted, it was properly discounted.  McGoffin does not require a finding of error here.

## III.    Consideration of Mental Impairments

Plaintiff's final claim is that the ALJ failed to consider her mental impairments in

making his RFC assessment.  She argues that the Tenth Circuit has strictly enforced the

stringent requirement that an ALJ must consider even nonsevere impairments such as the

mental impairments at issue here when assessing RFC.  (Pl. Br. 18-19) (citing Wells v.

Colvin, 727 F.3d 1061, 1065 (10th Cir. 2013)).  In response, the Commissioner makes

two alternative arguments.  First, she asserts that the ALJ found Plaintiff's mental

impairments "not medically determinable" and that such alleged impairments may not be

considered in assessing RFC.  (Comm'r Br. 12).  Alternatively, she argues that even if the

ALJ found Plaintiff's mental impairment is medically determinable, "the evidence simply

does not support Plaintiff's claims of mental limitations affecting her ability to work,"

and the ALJ properly did not include mental limitations in Plaintiff's RFC.  Id. at 13.

As Plaintiff argues, "the ALJ is required to consider the effect of all of the

claimant's medically determinable impairments, both those he deems 'severe' and those

'not severe.' " Hill v. Astrue, 289 F. App'x 289, 292 (10th Cir. 2008) (emphasis in

original) (citing SSR 96-8p, 1996 WL 374184, at *5). And, although the ALJ noted a "limited record" regarding mental impairments (R. 21), he applied the Commissioner's psychiatric review technique and stated his finding that "[b]ecause the claimant's medically determinable mental impairment causes no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation of extended duration in the fourth area, it is nonsevere."  (R. 22) (emphasis added).  There can be no doubt the ALJ found that Plaintiff's mental impairment is medically determinable, and that it is not severe.  Therefore, he was required to consider it in his RFC assessment.  And, the record reveals he did so.  Moreover, he specifically discussed Plaintiff's limitations in concentration, persistence, or pace:

> She reported the greatest level of functional difficulty in this area, stating that she has difficulty concentrating for several lengthy periods in a typical week.  She described difficulties with rapid task completion.  She has a history of semi-skilled and skilled work, and she recently completed training in the culinary arts (Exhibit 9E; Hearing Testimony).  None of her examining or treating physicians has noted any obvious deficits (Exhibits 2F, 11F).  Overall, the evidence, including the claimant's medical treatment and day-to-day activities, does not demonstrate more than mild difficulties in this third functional area.

(R. 22).  Although the ALJ recognized Plaintiff's complaints regarding concentration, persistence, or pace, he also found her allegations of symptoms not entirely credible.  (R. 23).  Moreover, he specifically noted Plaintiff's history of skilled and semi-skilled work, her recent training in the culinary arts, and that no medical source (other than Dr. Kromo, whose opinion the ALJ properly discounted) had noted any obvious deficits.  Id. at 22. And, Plaintiff has the burden to prove her work-related limitations.  Although Plaintiff

14

quotes SSR 85-15 for the proposition that "losses of intellectual and emotional capacities are generally more serious when the job is complex," she does not point to any record evidence of work-related mental limitations beyond her own testimony which the ALJ found not credible and Dr. Kromo's opinion which was properly discounted.  And the court finds none.  Plaintiff has not met her burden to demonstrate work-related mental limitations precluding the RFC assessed.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated this 7th  day of November 2016, at Kansas City, Kansas.


s:/ John W. Lungstrum_____
**John W. Lungstrum**
**United States District Judge**

15